# Wood, Appellant, v. Paul.

*Contracts — Construction — Creation of trust — Presumption against grantor.*

1. Where a trust is created by deed, the settlor has it in his power to define exactly what is to be given and what reserved and will be held to have intended to give everything not expressly reserved. The writing will be construed most strongly against him, every inference of law being drawn in favor of his grantee.

2. A decedent, who owned a controlling interest in the stock of a manufacturing corporation, executed a declaration of trust in his lifetime, in view of his retirement from business, by which he transferred said stock to his brother and nephew, in trust, to pay to the brother the income from the stock during his lifetime, and should he die before the settlor, then to pay the income from the stock to the nephew, or for his benefit, and further providing, "should the said (nephew) predecease the said (brother) and me, ......then upon my death the right, title and property in said capital stock shall at once vest in and belong to the said (brother) absolutely." The deed further contained a declaration that the equitable ownership of the stock was in the brother and nephew; that settlor had only legal title, and could not sell except under certain conditions, and that the consideration for making the

declaration of trust was the promise of the brother to devote his entire time and attention to the business of the company, and the further agreement of the brother, binding himself and the nephew, that he, or in the event of his death, his son (settlor's nephew) would pay the settlor in cash $3,000 annually during his lifetime. The deed also contained the following clause: "I do hereby further declare that this trust and the stock or property held thereunder is irrevocable, except in the event of a breach of the performance of the same on the part of the said John E. Wood (the brother) in regard to the care and management of said business, or in the payment of said annual sum of money by either the said John E. Wood (the brother) or the said Oliver G. Wood (the nephew), or in the event of my being obliged, for any reason whatever, to assume the active and actual care, management and conduct of said business, in which event I do declare that this declaration of trust is and shall be void and of none effect, and that said stock shall revert to my absolute and exclusive ownership." The decedent died before either his brother or nephew. Upon a contest between the brother and the nephew on the one side, and the executors and widow of decedent, on the other, to determine whether the absolute ownership of the stock vested in the brother or reverted to the estate of decedent, it was decided by the lower court that the stock would vest in the brother only in the event that his son, decedent's nephew, predeceased the settlor, which contingency had not happened. *Held,* reversing the lower court, that the stock vested absolutely in the brother of decedent, upon decedent's death.

Argued April 22, 1915.    Appeal, No. 162, January T., 1915, by plaintiffs, from decree of C. P. No. 5, Philadelphia Co., March T., 1914, No. 1074, in equity, dismissing bill in equity to require defendants to transfer stock, in case of John E. Wood and Oliver G. Wood v. J. Rodman Paul and H. Alan Dawson, executors of the last will and testament of William O. Wood, deceased, and Gretchen Wood, widow of William O. Wood, deceased.    Before BROWN, C. J., ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ.    Reversed.

Bill in equity to require defendants to transfer certain shares of stock to plaintiffs.    Before RALSTON, J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill.    Plaintiffs appealed.

*Errors assigned* were in dismissing exceptions to find-ings of fact and law and the decree of the court.

*John G. Johnson,* with him *Chapman & Chapman,* for appellants.

*John Arthur Brown,* with him *Henry P. Brown,* for Gretchen Wood, widow of William O. Wood, deceased, appellee.

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

This is a controversy between the executors and widow of William O. Wood, deceased, on one side, and his brother and nephew on the other, in which is involved the ownership of 253 shares of the capital stock of a manu-facturing corporation. The decedent, who held a con-trolling interest therein, desiring to be relieved from business cares and at the same time procure an income sufficient to meet his wants, executed a declaration of trust in favor of his brother and nephew, setting aside his stock to be held and enjoyed upon the uses and trusts therein set forth. The following are the purposes for which the trust was declared to be created :

"To hold said stock; to collect and pay over all divi-dends, income and profits issuing out of, collectable upon or derived from said stock when and as collectable, de-rived or received, unto the said John E. Wood for and during the full term of his natural life; that in the event of the death of the said John E. Wood, should he pre-decease me, then to pay over the said dividends, incomes and profits issuing out of, collectable upon or derived from said stock when and as collectable, derived or re-ceived, unto Oliver G. Wood, son of the said John E. Wood, providing he shall have reached and attained his majority, or in the event of his not having reached or at-tained his majority then to his guardian duly and legally appointed. Should the said Oliver G. Wood predecease the said John E. Wood and me, the said William O.

Wood, then upon my death the right, title and property in said capital stock shall at once vest in and belong to the said John E. Wood absolutely. In the event of the death of the said John E. Wood before me, the said William O. Wood, then all the right, title and property in said capital stock shall at once vest in and belong to the said Oliver G. Wood at or upon the death of me, the said William O. Wood.

"I do hereby further declare and say that the equitable ownership of said capital stock is now in the said John E. Wood and Oliver G. Wood subject to the conditions above set forth, and that I only have the legal title therein; that I will not sell or make sale of any of said capital stock, without the written consent of the said John E. Wood first had and obtained. In the event of the sale of said stock by mutual consent, it is hereby agreed that the proceeds of such sale shall be placed in trust to enforce the provisions hereinafter set forth.

"I do hereby further declare and say that the consideration for the making of this declaration of trust is the promise and agreement on the part of the said John E. Wood to devote his entire time, services, skill, labor and attention to the business of the said W. O. Wood Manufacturing Company, and the further agreement on the part of the said John E. Wood, binding himself and the said Oliver G. Wood, signified by the said John E. Wood accepting in writing this declaration of trust, that he, or in the event of his death the said Oliver G. Wood, shall and will pay to me the sum of three thousand dollars, ($3,000) in cash per annum, payable semi-annually, for and during the full term of my natural life, the first payment to be made on the first day of February, A. D. 1905.

"I do hereby further declare that this trust and the stock or property held thereunder is irrevocable, except in the event of a breach of the performance of the same on the part of the said John E. Wood in regard to the care and management of said business, or in the payment

of said annual sum of money by either the said John E. Wood, or the said Oliver G. Wood, or in the event of my being obliged, for any reason whatever, to assume the active and actual care, management and conduct of said business, in which event I· do declare that this declaration of trust is and shall be void and of none effect, and that said stock shall revert to my absolute and exclusive ownership."

John E. Wood accepted the trust and fully performed his part of the agreement up to the death of William O. Wood, November 3, 1913; and at all times devoted his time, skill, services and attention to the business of the W. O. Wood Manufacturing Company, and having also made the semi-annual payments as and when they became due. William O. Wood by his will, devised his estate to his widow. John E. Wood and Oliver G. Wood, his son, made demand upon the executors of the estate of William O. Wood for a transfer of the stock referred ·to in the trust agreement; but the executors, having received notice of the widow's claim to the stock as part of the estate of her husband refused to make the transfer, whereupon the father and son filed this bill to obtain relief. The court below dismissed the bill as to Oliver G. Wood, because his father was still living, and as to John E. Wood on the ground that the stock became his absolutely only in case his son died before William O. Wood, and as this contingency had not happened, he had no interest in the principal and only a life estate in the income from the stock, after which it belonged to the estate of William O. Wood.

It will be seen from an examination of the agreement above recited, that the primary purpose of the settlor was to secure payment to him of the sum of three thousand dollars ($3,000) annually for life. The direction as to the title to the principal of the stock was evidently made with the idea of vesting it in the person who would survive and carry out the provisions of the agreement; thus, the provision in favor of the son was no doubt

made to guard against the probability that the settlor would live longer than his brother, and it was apparently only in that event that the son had any interest either in income or principal. The father was bound for the principal consideration; in fact, the whole of it, unless he died before the settlor. He was to pay the income and also give his time and attention to the business. In view of these facts, it seems highly improbable to say the least that the parties meant to make his right to the principal, that is the stock itself, depend upon the circumstance of his son dying before both father and uncle.

To hold that the title to the stock only vested in John E. Wood on condition that his son died before William O. Wood, the decedent, would not only disregard the intention of the parties as gathered from the instrument as a whole, but would have the effect of reading out of the last paragraph the provision that the trust was irrevocable, except in the event of a breach in the performance of the covenants thereof in regard to the care and management of the business, or in the payment of the annual sum of money by either father or son. John E. Wood faithfully performed his duties in the care and management of the business, and made the annual payments as required until the death of William O. Wood. It would seem most unjust to deprive him of the fruits of his labor and investment by a technical construction of the agreement between the parties. In our opinion a reasonable interpretation of the language of the instrument as a whole sustains the contention of appellants. A careful reading of the last paragraph shows the provisions were not made with the view to restrict the absolute property given in another part of the instrument as between the settlor and the beneficiaries; but, rather that it was intended to govern the rights existing under the agreement between the beneficiaries themselves, and in addition secure to the settlor performance of the conditions of the trust. So long as the son was alive there was a probability of his outliving his

father, and therefore some part of the condition might be performed by him. On the other hand so long as the father was alive he was bound to carry out all the terms of the trust. The settlor, therefore, found it expedient in order to safeguard his own interest to provide that the stock should go to the survivor, the one who must finally complete the performance up to the time of the settlor's death. Viewed from this standpoint the provision "if the said Oliver G. Wood predecease the said John E. Wood and me, the said William O. Wood, then upon my death the right, title and property in said capital stock shall at once vest in and belong to the said John E. Wood absolutely," does not mean that whether it should ever vest in the father was conditional upon Oliver G. Wood dying before both John E. Wood and William O. Wood, but merely that if the son should die first there was no longer any reason for withholding the entire ownership from the father after the settlor's death.

He who created the trust received the full consideration from him who accepted it. The rule governing the construction of deeds should apply here, which is that since the settlor had it in his power to define exactly what was to be given and what reserved, he shall be held to have intended to give everything not expressly reserved and the writing will be construed most strongly against him, every inference of law being drawn in favor of his grantee: Grubb v. Grubb, 101 Pa. 11; Sheffield Water Co. v. Elk Tanning Co., 225 Pa. 614. To say that the settlor intended to create an absolute estate in those who accepted it only in case one of them died before him, and not in case both should survive him, leads to a result which cannot be sustained in view of these rules of construction and of the particular circumstances and purposes of the execution of this writing. Such construction would also be contrary to the last paragraph of the writing itself and render the whole inconsistent. The purpose of William O. Wood was to secure to himself an annuity during life and relief from participation in the

business of the corporation, and if he received these things, he was apparently satisfied that full value would be given him for his property. Any further provision as to the vesting in the two beneficiaries was for the evident purpose of securing his own interest in case one of the other should die and cannot be construed as an additional condition upon breach of which the trust should terminate.

The question as to the respective rights of father and son in the stock is not before the court at this time, consequently need not be considered.

Decree reversed, bill reinstated and executors ordered to make transfer of the stock in accordance with the prayers in the bill. Costs to be paid by appellees.