## Westcott *et al.* *versus* Edmunds.

1. A final decree in equity until set aside on appeal, is a bar to a suit at law for the same subject-matter, whether the suit be instituted before or after.

2. The effect of the decree is the same whether offered in evidence or pleaded.

3. Where the active duties of a trustee holding the legal title have ceased, the legal title vests in the beneficiary without a conveyance.

4. An ejectment was brought in the name of Edmunds trustee of Garretson after the trust had ceased. Edmunds's name might be struck off, leaving the suit to stand in the name of Garretson.

February 23d 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius, No. 368, to January Term, 1871.

This was an action of ejectment for an undivided half of the real estate, the subject of the bill in Edmunds's Appeal,—the preceding case,—brought, February 27th 1868, by Luther C. Edmunds, trustee for Eliza H. Garretson, against Thomas C. Harkins and others. Ebenezer Westcott was afterwards admitted to defend as landlord.

The case was tried, February 11th 1870, before Thompson, C. J. The evidence was the same as the facts admitted in the pleadings, and found by the master in Edmunds's Appeal.

On the trial the defendants offered in evidence the record of the suit in equity in the preceding case, including the final decree at Nisi Prius dismissing the plaintiffs' bill. The offer was rejected by the court and a bill of exceptions sealed.

Amongst other points the defendants submitted the following, which was refused by the court, viz.:—

"Under the will of John Hance, the trust in the plaintiff ceased at the death of his widow, and the plaintiff has therefore no title upon which he can recover in this action."

After stating the leading facts of the case the Chief Justice further charged:— * * *

"The defendant had purchased and acquired the control of the mortgages before he or his son wrote to Mrs. Garretson. He was not led to do this by anything contained in her letter—it was after the purchase. The foreclosure was doubtless done to save his own interest. He put himself into the necessity for doing this by buying Laming's interest. Nor does her answer evince any knowledge of an intention on the part of Westcott to buy in the property at public sale on the mortgages. To estop Mrs. Garretson, for the correspondence was with her, a married woman, if anything could do it but lapse of time, she or the trustee should have been put upon the alternative of paying or letting the property go. Has this been shown to have been done by anything

in the testimony? I do not see any evidence of it. Do you see any?

"The defendant bought in the encumbrances and afterwards the property, and I see not how he can be regarded as standing in any other light than as trustee of the equitable title for her, his co-tenant. He was tenant in common before he purchased; by purchasing from Laming he placed himself in this predicament. On doing to him equity, equity will require him to convey to the cestui que trust on being reimbursed. This may be done by a conditional verdict. * * * You may find for the plaintiff to be released on payment by the plaintiff the amount of the shares of the encumbrances purchased by the defendant, with interest and costs, which Mrs. Garretson's interest in the property ought to bear; carry the interest up to this day, deducting from this any profits proved to have been received by the defendant after he became the purchaser at sheriff's sale. The proof is not very explicit as to what amount was received, but you will determine according to the testimony as to that. You will, in your conditional verdict, fix such reasonable time as you think, under the circumstances, the plaintiff ought to have to raise the money to pay off the amount due defendant, whatever it may be, taking into consideration the time elapsed since Mr. Westcott purchased at sheriff's sale. This is what your verdict should be as to amount. If you find it in substance, we will assist to mould it into form."

The verdict was for the plaintiff for an undivided half of the premises on condition that he pay to the defendant, within ninety days, the sum of $1000; if not so paid the verdict to be for the defendant.

The defendant took a writ of error and assigned for error, amongst others, rejecting his offer of evidence and the refusal of the foregoing point.

*J. M. Pile* and *G. W. Thorn*, for plaintiffs in error.—The final decree in equity was a bar to the ejectment. Chancery having once taken jurisdiction would dispose of every question involved in the case: McGowin v. Remington, 2 Jones 56; Findlay v. Keim, 12 P. F. Smith 112. The decree in equity is conclusive at law: Williams v. Row, 12 P. F. Smith 118; Saylor v. Hicks, 12 Casey 392; Kelsey v. Murphy, 2 Id. 78; Bank v. Biddle, 2 Pars. Rep. 53; Kelsey v. Hobby, 16 Pet. 268; Cleveland, Pittsb. and A. Railroad v. Erie, 1 Grant 212; 3 Phill. on Ev.; Hill & C., note 590; Finley v. Hanbest, 6 Casey 193.

*A. Thompson* and *A. V. Parsons*, for defendant in error.

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—There are but two of the assignments of error in this case which need to be noticed. We think the court erred in refusing to admit in evidence the record of the equity suit be-

tween these parties in the Supreme Court 'No. 66 of January Term 1868, in which a final decree had been made. The subject in controversy in this action and in the equity suit is the same, to wit, the alleged title of Eliza H. Garretson, under the will of John Hance, to the property for which this ejectment is brought. The Supreme Court at Nisi Prius had dismissed the bill filed by Mr. Edmunds as the trustee of Mrs. Garretson after a hearing upon the merits, in which it was held that her title had been extinguished by the sheriff's sale to Ebenezer Westcott under the mortgages against John Hance, the testator. ' Until this decree had been set aside upon an appeal, it was final, and a bar to any further litigation of the same matter, whether instituted before or afterwards. The Court of Nisi Prius had jurisdiction of the question of trust, and having dismissed the plaintiff's bill, because, as the court then decided, there was no trust, for Mrs. Garretson in the purchase made by Westcott at the sheriff's sale, her title under the trust was concluded, while the decree remained unreversed. Had the decree been against Westcott he would have been compelled by the process of the court to convey to Mrs. Garretson the undivided half of the property upon such terms as equity might impose. It would have been final as to him, and mutuality requires the decree against her to be final also. Upon authority the case is equally conclusive, as may be seen in the following decisions: Kelsey *v.* Murphy, 2 Casey 78; Saylor *v.* Hicks, 12 Id. 392–4; Williams *v.* Row, 12 P. F. Smith 118. Nor does it make any difference whether the record be offered in evidence or the decree pleaded, its effect as a bar being the same: Finley *v.* Hanbest, 6 Casey 194. Nor whether the decree was made before or after the institution of this suit: Finley *v.* Hanbest, *supra;* Duffy *v.* Lytle, 5 Watts 120.

We think the court erred also in holding that, under the will of John Hance, the trust in Luther C. Edmunds for Mrs. Garretson did not cease on the death of the mother, Mrs. Catherine Hance. The trust is in the following words, to wit: "in trust, nevertheless, to pay the rents and proceeds thereof from time to time, as they shall be received, unto my wife Catherine, for and during all the term of her natural life, and upon the decease of my said wife, then in trust to grant, convey and assure the whole of the said estate, real and personal, unto William Slaughter Laming and Eliza Hance Garretson (children of William and Catherine Laming), their heirs, executors, administrators and assigns, for ever." It is very clear that the active duties of the trust under this will ceased at the death of Catherine Hance, the life-tenant under the trust; and after that there remained no further duty to be executed by the trustee, but to convey the estate to the persons in remainder. But this, it has been decided, does not continue the trust, the law, in this state, executing the legal

[Westcott v. Edmunds.]

title in the remaindermen without the formality of a convey-
ance. It is true, that decrees have been made in such cases com-
pelling trustees to convey to the person in remainder or to mar-
ried women after coverture had ceased; but it is said this was
merely to remove the cloud from the title arising from the appa-
rent trust. Whatever might have been the impression as to the
necessity of such a decree, it is now clearly settled by authorita-
tive decision that the legal estate vests without a conveyance:
Bacon's Appeal, 7 P. F. Smith 504; Dodson v. Ball, 10 Id. 493,
501; Rife v. Geyer, 9 Id. 393, 397; Freyvogle v. Hughes, 6 Id.
228; Nice's Appeal, 14 Wright 143; Barnett's Appeal, 10 Id. 403.
Luther C. Edmunds had therefore no title at the time of the insti-
tution of this ejectment, his trust having ceased at the death of
Mrs. Hance. But this error would have been of no importance
had there been no other, as the action being instituted in the
name of the trustee for Mrs. Garretson, his name could have been
stricken off, leaving it to stand in the name of Mrs. Garretson, as
the legal party in the cause: Kaylor v. Shaffner, 12 Harris 489;
Prescott v. Borough of Duquesne, 12 Wright 118. The action
being thus amendable, this court will not reverse on this ground,
but treat the record as if amended : Robertson v. Reed, 11 Wright
115; Trego v. Lewis, 8 P. F. Smith 469. The other assignments
of error need not be noticed, as a final disposition of the whole
controversy will be made in the appeal in the proceeding in equity
to compel a conveyance argued before us at the same time with
this writ of error. But for the error in not receiving the record
of the equity suit,

The judgment is reversed.