## Lyon Trust.

Argued November 16, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John M. Gallagher,* for appellant.

*Harry Menzer,* with him *Lester K. Wolf,* for appellee.

OPINION BY RENO, J., January 14, 1949:

At the audit of the account of the Mellon National Bank and Trust Company, successor to Union Trust Company, trustee under an inter vivos deed of trust wherein Charles S. Lyon was the settlor, the auditing judge awarded the balance of the income to Jesse R. Lyon, the income beneficiary named in the deed of trust. Rosa Duden, claiming that the deed had been modified by the last will and testament of the settlor and that

under the latter she was entitled to one-half of the income of the trust, excepted to the award. Her exceptions were dismissed by the court en banc, and she appealed from the final decree. The decree will be affirmed.

Charles S. Lyon, a citizen of Austria, residing in Vienna, executed the deed of trust on June 12, 1934, and delivered the trust res to the designated trustee. It created trust estates for several beneficiaries, but we are here concerned only with the net income payable to the settlor's son, Jesse R. Lyon, "during the full term of his natural life." [1] The deed contained a provision whereby the settlor could deposit additional funds in the trust in his lifetime or by his last will and testament, and the following power of revocation: "This trust may be revoked by either of the parties hereto upon thirty days written notice, which notice may be waived by the Trustee; whereupon the principal of the trust fund shall be transferred to the party of the first part, or upon his order, and the trust shall end."

In 1938, after the Nazis seized power in Austria and the Anschluss became effective, the settlor, obviously under official duress, wrote two letters from Vienna to the trustee requesting the return of the res. In one letter he said: "The Govt. here demands that I bring what money I have in U. S. to Germany." The trustee forwarded a blank form of notice of revocation which the settlor returned duly executed with a covering letter dated October 7, 1938, in which he said: "I dislike to take this money out of your hands where it has been so long & so well looked after, but I have no choice in the matter." The trustee acknowledged receipt of the notice and informed him that it would proceed with the liquidation of the trust res, probably planning to prolong the

---

[1] The principal is to be "paid . . . to those entitled to receive the same as under the terms of his last will and testament my said son, Jesse R. Lyon, shall direct and appoint . . .".

process and delay it, as long as possible, for his benefit.[2]

Charles Lyon escaped to Italy and from Florence he wrote on November 27, 1939: "Now for the first time since early in 1938 I am in a land where I can write and say what I wish to without the danger that the letter will be held up & the contense known by the authorities. I have been compelled to write you several times asking you to send what I have in your hands to me in Vienna. As proof that I have written I have had to give copy's of these letters to the Deutscher Reich Bank. No doubt the letters were also controlled before they reached you. I am glad that so far as I know you have ignored all these letters. *I want all of my property in the U. S. to stay with you.* Please ignore any letters or demands from either the German Consul or me that try to get my money away from you. . . ."[3]

Concededly the letter constituted a revocation of the notice of revocation, and, no part of the res having been delivered to the settlor, the trust continued according to its terms.

In 1944 the settlor died, and his will probated in Vienna provided, inter alia: "As conditions are now very different here in Europe than at the time the Agreement between the Union Trust Co. and myself was made, 12 June 1934, I wish to write the following Will. I want everything that I possess in the U. S. at the time of my

---

[2] In a letter to appellant's counsel printed in the record, the trustee wrote on April 19, 1948: "The circumstances in connection with this attempted revocation were suspicious, and it appeared that the German government in control of Austria was forcing Austrian nationals to withdraw their funds from the United States, Accordingly, the Trustee deferred taking any action on the revocation."

[3] Even after the settlor's escape to Italy he was not free from the demands of the totalitarian authorities. On December 15, 1939, the German consul at Pittsburgh wrote to the trustee, reciting verbatim parts of the correspondence between the settlor and the trustee, and stating: "Upon Mr. Lyon's request, we would deem it a favor if you will drop us a few lines as to the disposition of this account."

death to stay or to be put into the hands of the Union Trust Co. and they are to manage it as follows. One half of the net income is to be paid quarterly to Frau Rosa Duden whose address is Vienna II. Bezirk, Böcklinstr. 8 as long as she lives. If my son Jesse is alive the other half is to be at his disposal. After the death of Frau Duden he is to have the entire income as long as he lives. He is heir to all and can dispose of all by Will."

Appellant contends that the will partially revoked or modified the deed of trust, and that she is entitled to one-half of the income of the trust. The position is not tenable. The deed vested a present interest in the beneficiaries named therein, subject to divestiture by the exercise of the power of revocation in the manner prescribed. It was a valid trust inter vivos, and was not rendered testamentary in character by the power to revoke. *Windolph v. Girard Trust Co.*, 245 Pa. 349, 91 A. 634; *Beirne v. Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 161 A. 721; *Reese's Est.*, 317 Pa. 473, 177 A. 792; Restatement, Trusts, § 57 (1). The deed was not a testamentary disposition of property, and therefore the will did not operate as a codicil to or a modification of it.

The deed vested a present interest in Jesse Lyon, and as to him the deed could be modified only in the manner prescribed by its terms. Execution of the will was not notice to the trustee, and lodgment of the certified copy of the probated will with the trustee was not a revocation, since the power to revoke ceased with the settlor's death. This is the rule laid down by *Shapley Trust*, 353 Pa. 499, 46 A. 2d 227; *Reese's Est.*, supra; *Dolan's Est.*, 279 Pa. 582, 124 A. 176.

Appellant relies solely upon *Chestnut St. Nat. Bk. v. Fidelity Ins. Trust and Safe Deposit Co.*, 186 Pa. 333, 40 A. 486, but that case has no relevance here. There the settlor executed a deed of trust by which the income was to be paid to herself during her life, and the principal was to be divided among her three sons *after her death.*

No beneficial interest was vested in any one until after her death, and consequently the disposition of the property to take effect after her death was testamentary, and revocable.

Appellant's further contention that the law of Austria should determine the distribution of the income might have force if the will superseded the deed. But even so, the record does not contain the applicable provisions of the Austrian law, and we do not take judicial notice of the law of jurisdictions outside of the United States. Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, §§ 1, 5, 28 PS §§ 291, 295.

Decree affirmed.