Damiani *v.* Lobasco, Appellant.

2

Argued January 4, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Rames J. Bucci,* with him *Bucci & Bucci,* for appellants.

*Martin G. Stein,* with him *William S. Stein,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 19, 1951:

Antonio Damiani, appellee, filed this bill in equity against Anna Lobasco, trustee under an *inter vivos* deed of trust executed by him, to compel her and Frank Lobasco, her husband, appellants, to execute a deed of conveyance to Patrick and Lena Damiani, his wife,

contending that the settlor had reserved unto himself a power to direct the trustee to convey to such person or persons as he should request and designate. An answer was filed which, in effect, denied that settlor possessed a power of revocation, but instead, asserted a right in the trustee to determine whether a conveyance should be executed. After hearing, the Chancellor filed his adjudication and granted the relief sought. This appeal is from the decree of the court *en banc* dismissing exceptions to the adjudication.

The Chancellor made the following findings of fact. Antonio Damiani is 80 years of age, a widower, and father of Anna Lobasco. He can neither read nor write the English language. On June 24, 1943, Antonio conveyed the premises situate at 1316 Moore Street, Philadelphia, to Anna Damiani, now Anna Lobasco, his daughter. The deed of conveyance establishing the trust, conferred upon Antonio the right to use the property, to occupy it, or to rent it, to receive the rents, issues and profits, and, in addition, Antonio was to pay all taxes, water rents, and other charges assessed against the property, during the full term of his natural life. Upon the death of Antonio, Anna was to hold the property for her own use in fee, subject to the payment of sums of money to her brothers and sisters, namely, $1,200 to Patrick Damiani, $300 to Rose Damiani, $300 to Lucy Damiani, $300 to Margaret Damiani, and $300 to Frank Damiani. The deed contained the following provision: ". . . that it shall and may be lawful for the said Anna Damiani, at the request and with the consent of the said Antonio Damiani (testified by his joining in and becoming a party to the deed therefor) at any time during the lifetime of the said Antonio Damiani, to grant, sell and convey the said premises, free, clear and discharged of the said trusts."

No consideration was in fact paid, although a consideration of $3,600 was stated in the deed. Prior and subsequent to the conveyance, Antonio continued to reside in the premises. On September 1, 1943, Anna and her husband and their minor daughter moved into the property, pursuant to an oral agreement with Antonio, whereby, in consideration of their use and occupancy, they agreed to keep the premises in good order and repair, pay all taxes and water bills and other charges assessed against the property, provide the father with one meal a day, and furnish facilities for him to cook other meals. The father reserved the use of one room.

The parties continued thus to live together until December 10, 1949. On November 8, 1949, Antonio entered into an agreement with Patrick Damiani and Lena, his wife, to sell the premises to them for the sum of $5,000 and requested Anna to execute, acknowledge, and deliver a deed for the premises to them. This she refused to do. The Chancellor, on the basis of the foregoing facts, concluded that the deed of June 24, 1943, was testamentary in character and, therefore, revocable at will by the settlor; that the said deed contained an express reservation to Antonio of the right to revoke; that the right of revocation had been duly and properly exercised; and, that Patrick, Rose, Margaret, Lucy, and Frank Damiani acquired no vested rights by virtue of the deed of June 24, 1943. A decree *nisi* was entered, directing Anna and her husband to execute, acknowledge, and deliver a fee simple deed, joined in by Antonio, conveying the premises to Patrick and Lena Damiani, or to such other nominee as Antonio might select. The Chancellor further entered judgment in favor of Anna and Frank against Antonio in the sum of $1,500 to reimburse them for permanent improvements made by them subsequent to the execu-

tion of the deed. Exceptions to the adjudication were dismissed by the court *en banc* and a final decree entered. This appeal followed.

Appellants contend that (1) an interest in the real estate vested immediately in Anna Damiani and the instrument of conveyance was not testamentary, and (2) the deed contained a power of revocation which could be exercised only by the trustee consenting to join in a deed of conveyance with the settlor.

Antonio Damiani, by virtue of the deed of trust executed by him, created an *inter vivos* trust vesting possession and full enjoyment thereof in his daughter, Anna, after his death. He reserved to himself a beneficial life estate and gave to his daughter, Anna, a vested right to the full enjoyment of the property upon his death. The fact that actual possession and enjoyment were deferred does not prohibit or prevent the vesting of the interest. Nor does the obligation to pay certain sums of money to her sisters and brothers affect the vesting of her interest. Such provisions, it is clear, do not make the trust testamentary: *Shapley Trust,* 353 Pa. 499, 500-501, 46 A. 2d 227; *Murphey v. C. I. T. Corporation,* 347 Pa. 591, 594, 33 A. 2d 16; *Reese's Estate,* 317 Pa. 473, 474, 177 A. 792; *J. P. Lines v. W. E. Lines,* 142 Pa. 149, 167, 21 A. 809; *Dickerson's Appeal,* 115 Pa. 198, 210, 8 A. 64; *Lyon Trust,* 164 Pa. Superior Ct. 140, 144, 63 A. 2d 415; *Restatement, Trusts,* Sections 56 (f) and 57 (1).

Appellee relies upon *Frederick's Appeal,* 52 Pa. 338, and cases following it, particularly *Rick's Appeal,* 105 Pa. 528, 535, to establish his contention that a deed of trust made for the grantor's own personal convenience is revocable at pleasure. This Court has said, however, in *Rynd v. Baker,* 193 Pa. 486, 491-492, that *Frederick's Appeal,* supra, is limited to its own peculiar facts and is not authority for the proposition

6

that every voluntary trust conveyance of property which reserves to the grantor a life interest with a direction to convey the principal of his estate at death to others is a testamentary instrument and, therefore, revocable at will. Further, *Rick's Appeal,* supra, is inapposite in that in the instant case there is not even a suggestion that Antonio was deceived through false representations of the grantee, that the trust was improvident, or that it left him without sufficient means of support.

Appellants' contention that the power of the settlor to revoke can be exercised only with the consent of the trustee must also be sustained. Where a settlor of a trust reserves a power to revoke in a given manner and under certain conditions revocation cannot be effected in another manner: *Shapley Trust,* supra, *Reese's Estate* supra, *Restatement, Trusts,* Section 330 (j).

The deed of trust executed by Antonio Damiani provided a means and method of revoking or terminating the trust. Termination "shall and may be lawful" and effected by the trustee executing a deed of conveyance "at the request and with the consent of the" settlor. The words "shall" and "may" are often used together, in the sense that the word "shall" expresses futurity only and implies no obligation. See *Brown v. Southern Ry. Co.,* 187 Fed. 481, 39 *Words and Phrases,* p. 120. The conjunctive use of these words in the instant case gives the trustee power and discretion if requested to execute a deed of conveyance, to convey the premises, with the settlor's joinder, and thus terminate the trust and obtain her discharge from any obligations or duties thereunder.

While the intention of a settlor is the guide primarily to be followed in construing a deed of trust (*Wolters Estate,* 359 Pa. 520, 59 A. 2d 147) it is never-

theless the language used which controls: *Thompson Trust,* 348 Pa. 228, 35 A. 2d 261. Equally well established is the principle that "since the settlor had it in his power to define exactly what was to be given and what reserved, he shall be held to have intended to give everything not expressly reserved and the writing will be construed most strongly against him, every inference of law being drawn in favor of his grantee: . . ." *Wood v. Paul,* 250 Pa. 508, 514, 95 A. 720. Clearly, settlor here did not reserve unto himself the exclusive power of revocation, accomplishable by a few simple words. Instead, the reason for which we need not surmise, he provided a method of termination, an essential part of which was an exercise of discretion by the trustee. Where the exercise of a reserved power is made dependent upon the acquiescence of a trustee other than the settlor himself, the procurement of such acquiescence is necessary to enable the settlor to act: *Shapley Trust,* supra; *Reese's Estate,* supra. See *Cleveland Trust Co. v. White,* 134 Ohio 1, 15 N. E. (2d) 627, 118 A. L. R. 475; *Restatement, Trusts,* Section 330 (1).

We conclude that the trustee had a discretionary power and could not be compelled to terminate the trust. To the extent to which discretion is conferred upon the trustee, the exercise of the power granted is not subject to the control of the court, except to prevent an abuse by the trustee of her discretion: *Brown's Appeal,* 345 Pa. 373, 29 A. 2d 52; *Restatement, Trusts,* Section 330 (1).

The decree of the court below directing a conveyance by appellants is reversed and the money judgment entered in their favor is set aside, the parties to pay their respective costs.